ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant, *v.* ROGER C. ELLIOTT, Adm'r of the Estate of Michael Staples, Deceased, *et al.*, Defendants-Appellees.

Third District   No. 80-209

Opinion filed October 3, 1980.—Rehearing denied November 10, 1980.

Alan F. Smietanski, of Berz & Smietanski, of Kankakee, for appellant.

Christopher Bohlen and Dennis A. Norden, both of Blanke, Norden, Barmann & Bohlen, of Kankakee, and John J. McGarry, of Stefanich, McGarry & Wols, Ltd., of Joliet, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On January 6, 1976, an automobile driven by Michael Staples collided with an automobile driven by Barbara Mayo, and both drivers were killed. James Mayo, executor of the estate of Barbara Mayo, filed a wrongful death action against Roger C. Elliott, administrator of the estate of Michael Staples. Elliott sent a demand for a defense to Allstate Insurance Company as the insurer of Lorraine Staples, Michael Staples' mother, with whom Michael lived, and to Pekin Insurance Company as the insurer of Carol J. Collins, the titleholder of the car driven by Michael. After demanding that Pekin defend Elliott, Allstate retained Michael R. Berz as counsel to represent Elliott. Berz filed an answer on behalf of Elliott on December 23, 1977, but he later withdrew from the wrongful death action, and on February 21, 1978, he filed a declaratory judgment action on behalf of Allstate as plaintiff against Elliott as defendant. In the meantime, Allstate hired Attorney Alan F. Smietanski to defend Elliott in the wrongful death action, and he filed an answer on December 28, 1977. Berz then withdrew his answer and appearance on Elliott's behalf in the wrongful death action. After the Berz law firm filed Allstate's third amended petition for declaratory judgment signed by Smietanski, Elliott, who was an attorney, filed a reply in his own behalf. Count I of that petition alleged that the automobile being driven by Michael was "owned by, registered and titled to one Carol J. Collins," that Michael was either using the automobile without the owner's permission or, in the alternative, his use was beyond the scope of her permission. Allstate also alleged that Elliott contends that Allstate is obligated to defend him due to the fact that Michael was the owner of the automobile he was driving, and in

respect to this claim, Allstate denied it had an obligation to defend under its policy. In his reply to Allstate's petition, Elliott denied the allegations asserting Carol Collins' ownership and admitted that Michael was owner of the car in question.

At trial of the declaratory judgment action, Carol Collins testified that during December of 1975 she agreed orally to sell her car to Michael Staples. He was to take over her debt of $1,400 and to make two monthly installment payments on her bank loan, and he also was to obtain his own financing for the balance of her loan. Michael's mother told Carol that the deal was okay and that she was willing to sign as guarantor of a loan to Michael. On January 2 or 3, 1976, the three of them went to the bank to discuss the matter with a loan officer. Carol did not testify to the results of that meeting. On January 4, 1976, Carol gave Michael the car along with the keys, her installment loan book, and a form to transfer the license plates to his name. She stated, as far as she was concerned, when she gave him the keys, the car was no longer hers but was then his.

Elliott also testified at trial to various letters he sent to Allstate and to Pekin demanding that he be furnished a defense and to the responses which he received. He also testified that, after Allstate filed the declaratory judgment action against him, Allstate hired Attorney Paul F. Davidson to represent Elliott. Davidson appeared once and then withdrew. Elliott also testified that Allstate never gave him notice of a reservation of its right to question coverage and that there were no other assets in Michael's estate.

At the conclusion of the trial of the declaratory judgment suit, the court found that Michael's mother was the owner of the automobile, that the vehicle was covered by her Allstate insurance policy, and that Pekin had no duty to defend Elliott. The court also found that Allstate waived all questions of coverage when it undertook Elliott's defense without a reservation of rights. Allstate has appealed, and James Mayo, executor of the estate of Barbara Mayo, has cross-appealed.

■■ Allstate first contends that the trial court's finding that the car was owned by Michael's mother, Lorraine Staples, was contrary to the manifest weight of the evidence. We agree.

According to the court's memorandum of opinion, the court drew several inferences from the fact that Mrs. Staples had agreed to guarantee the loan or cosign with Michael to finance the purchase. The court reasoned that she must have had title in a manner that would provide insurance coverage under her policy because lending institutions are known to require insurance to protect their investment and because it would be unreasonable to infer that title would be taken in Michael's name alone since insurance would then be more expensive. We think these inferences

are much too tenuous to support the court's conclusion, especially in the face of the undisputed evidence to the contrary. Carol Collins' testimony was not contradicted that the parties intended ownership to pass to Michael with possession, and the administrator of Michael's estate admitted that Michael was the owner. Clearly the record compels us to hold that the finding of ownership in Lorraine Staples was contrary to the manifest weight of the evidence.

■■ On cross-appeal, Mayo argues that Collins retained title as a matter of law under section 3—112(e) of the Motor Vehicle Act (Ill. Rev. Stat. 1979, ch. 95½, par. 3—112(e)), which governs transfers of title. By its own terms, section 3—112(e) does not control "as between the parties," and Illinois courts have repeatedly held that the time of passing of title is a question of the intention of the parties. (*E.g., Country Mutual Insurance Co. v. Aetna Life & Casualty Insurance Co.* (1979), 69 Ill. App. 3d 764, 387 N.E.2d 1037; *Perry v. Saleda* (1975), 34 Ill. App. 3d 729, 340 N.E.2d 314.) In view of the uncontradicted evidence that the parties intended ownership to pass to Michael, taken with Elliott's admission that title had passed, we think the only possible conclusion is that Michael was the owner at the time of the accident.

■■ Having concluded that Collins was not the owner, we note that Pekin had no duty to provide a defense to the wrongful death action. The trial court's ruling in favor of Pekin is, therefore, affirmed.

■■ Mayo also claims that the trial court should not have decided the issue of ownership at all because that was one of the ultimate facts to be determined in the underlying wrongful death action. This argument is unpersuasive for two reasons: (1) no such contention was made in the trial court, and it cannot be raised for the first time upon appeal, and (2) according to the record, the parties expressly requested the trial court to decide the question of ownership for purposes of determining insurance coverage. Hence, any possible error was waived. Furthermore, a determination of automobile ownership does not resolve the ultimate question of liability in the wrongful death action since the issues of negligence and proximate cause are yet to be decided.

Michael's ownership of the automobile having been conclusively established, it is clear that Allstate's policy would not provide coverage for Michael's car since it is not owned by the insured. The trial court, however, expressly found that Allstate was estopped to deny coverage because it undertook Elliott's defense without a reservation of rights.

■■ In *Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 240 N.E.2d 742, the court considered the insurer's options when the claim of the injured person appears to be outside the coverage of the policy.

The court noted that the insurer could wholly decline to assume the insured's defense and risk collateral estoppel on critical issues or that the insurer could proceed to defend anyway. The court then said:

> "Clearly, then, neither of these two alternatives is very satisfactory to an insurer. *Sims v. Illinois National Casualty Co. of Springfield*, 43 Ill. App. 2d 184, 199, 193 N.E.2d 123, cited with approval in *Lincoln Casualty Co. v. Vic & Mario's, Inc.*, 62 Ill. App. 2d 262, 267, 210 N.E.2d 329, 331, 14 A. L. R. 3d 853, discusses the insurer's options in such a predicament:
>
>> 'However, all authorities agree that quite often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. It can (1) seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights.'
>
> &#42; &#42; &#42;
>
> The right of the insurer to obtain a judicial declaration on the issue of policy coverage prior to adjudication of the personal injury claim has been favored by the weight of Illinois authority." (99 Ill. App. 2d 153, 163, 240 N.E.2d 742, 747-48.)

The court went on to hold that the insurance company gave its insured sufficient notice of its disclaimer of coverage when she was served with process in the declaratory judgment action. The same is true in the case at bar where Allstate filed its declaratory judgment action less than four months after the wrongful death action. Such notice was sufficient, and Allstate is not estopped to deny coverage.

■■ In support of the court's ruling that Allstate was estopped, Mayo argues that Allstate was responsible for a conflict of interest of counsel arising out of the fact that one of the attorneys hired by Allstate to defend Elliott in the wrongful death action was later used to represent Allstate against Elliott in the declaratory judgment suit. Although urged to do so, the trial court made no finding of conflict of interest, and under the circumstances of this case, we decline as well. Allstate itself was in a position of controlling one side in each suit since it was defending one and prosecuting the other. Its counsel could do no less. Also, in the declaratory judgment action, Elliott, who was himself an attorney, filed his own reply in response to Allstate's third amended petition. Thus there was no actual conflict within that suit by the time the final pleadings were filed. Additionally, at no time did Mayo or any other party seek to have either Allstate's attorney or Elliott's attorney removed from either case. This could be considered a waiver of any objection.

Taken with the case is a motion by Allstate for leave to supplement the record on appeal with certain documents from the Michael Staples estate proceeding. There being no objections, the motion is granted.

For the reasons stated, we affirm the judgment as to Pekin and reverse as to Allstate.

Affirmed in part; reversed in part.

ALLOY, P. J., and SCOTT, J., concur.